**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.: 8:12-cr-343-T-33AEP |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JOHN D. STANTON, III ) | **DEFENDANT'S MEMORANDUM IN** |
| ) | **SUPPORT OF SENTENCING** |
| Defendant ) | |

Defendant, John Stanton, respectfully requests this Court to impose a sentence that is "sufficient, but not greater than necessary" to achieve the sentencing purposes of 18 U.S.C. § 3553(a).

## FACTS

### A.  Introduction

Mr. Stanton is a 64 year old married man, with three grown children, and three minor children, all of whom reside in Florida. He stands before the Court on his first criminal convictions in his 64 years on this earth.  Currently he is in the Custody of the US Marshalls, and has been since his arrest in September of 2012.

### B.  Personal Background

John was born September 21, 1948 to John D. Stanton II and Peggy Stanton.  He has three sisters and one brother. John was born in Ohio, but at the age of 5, he and his family relocated to the State of Florida where he resided until he joined the army in 1968 and was sent to Vietnam.  While in Vietnam, John was severely wounded and sent back to the United States for medical treatment and eventual discharge.  John was awarded a Purple Heart for the combat related injuries, and a Bronze Star for his heroism in combat when he rescued a down aviator.

After being discharged from the Army John returned to Florida and finished his education, passes the Florida CPA Exam, and entered the workforce as an auditor for a major accounting firm.  John, while performing auditing at Caste Crete Corporation, met Mr. Ralph Hughes, the President of Cast Crete at the time.  Mr. Hughs and Mr. Stanton formed a business relationship and transformed Cast Crete into a national leader in pre-cast concrete products. John worked at Caste Crete from 1981 through January of 2011.  During that period of time, he started out as a consultant, then vice president of finance, and then President.  He had also, during that time period, acquired a substantial ownership interest in the company, although, Ralph Hughes always maintained his Majority shareholder Status.

## ARGUMENT

It has been eight years since the Supreme Court released the district courts from the mandatory Sentencing Guidelines in *United States v. Booker*, 543 U.S. 220 (2005). And in the wake of *Booker*, it is essential that district courts make an "individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007). The Supreme Court further emphasized that this Court "is in a superior position to find facts and judge their import under §3553(a) in the individual case…This means that "[t]he sentencing judge has access to, and greater familiarity with the individual case and the individual defendant before him than the [Sentencing] Commission or the appeals court." *Id*., quoting *Rita v. United States*, 551 U.S. 338, 357-58 (2007).  After *United States v. Booker* invalidated the mandatory use of the Sentencing Guidelines and declared them "effectively advisory," the district court has been tasked with imposing "`a sentence sufficient, but not greater than necessary to comply with the purposes' of § 3553(a)(2)." *United States v. Foreman*, 436 F.3d 638, 644 n. 1 (6th Cir.2006).

One of the earliest resentencing cases after Booker was the District Court for the Southern District of Texas' resentence of James Olis in a conspiracy to commit mail fraud case arising out of the Dynergy collapse, in which he had been sentenced under mandatory Guidelines to a 292-month term of imprisonment. *United States v. Olis*, 2006 WL 2716048 (S.D.Tex. 2006). Upon resentencing, United States District Judge Sim Lake imposed a 72-month sentence and with respect to the Guidelines, explained that "since Booker the guidelines are 'merely one sentencing factor among many, and the calculated guideline range must be considered in conjunction with the other § 3553(a) factors.'" The court further emphasized that "the guidelines do not have 'quasi -mandatory status.'" *Id*, at *11 (citation omitted).

Despite this clear mandate from the Supreme Court that the Sentencing Guidelines are only advisory, are but one factor to be considered under § 3553(a), and need not be presumed reasonable, the Government will argue for a mechanistic "sentence within the Guidelines." This Court should reject the Government's invitation. The 6th Circuit has opined on the issue of "presumptive reasonableness" and noted that:

> We pause to make two observations. First, in *United States v. Foreman*, we recently suggested in dicta that Williams' statement regarding the Guidelines' rebuttable presumption of reasonableness was "rather unimportant" even though it seems to "imply some sort of elevated stature to the Guidelines ...." *United States v. Foreman*, 436 F.3d 638, 644 (6th Cir.2006). Foreman observed that "Williams does not mean that a Guidelines sentence will be found reasonable in the absence of evidence in the record that the district court considered all of the relevant section 3553(a) factors." Id. Lest there be some confusion on this point, we note that as Foreman properly explained, "Williams does not mean that a sentence within the Guidelines is reasonable if there is no evidence that the district court followed its statutory mandate to `impose a sentence sufficient, but not greater than necessary' to comply with the purposes of sentencing in section 3553(a)(2)." Id.
>
> * * *
>
> Second, although ancillary to our decision in this case, we are mindful of the ongoing discussion among the circuit courts since our decision in Williams as to whether Booker accords the Guidelines a presumption of reasonableness. See, e.g., *United States v. Jimenez-Beltre*, 440 F.3d 514, 518 (1st Cir.2006) (en banc)

> ("[a]lthough making the guidelines `presumptive' or `per se reasonable' does not make them mandatory, it tends in that direction ...."); United States v. Fernandez, 443 F.3d 19, 27 (2d Cir.2006) ("declin[ing] to establish any presumption, rebuttable or otherwise, that a Guidelines sentence is reasonable"); United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir.2006) (observing that sentences correctly calculated under the Guidelines are "entitled to a rebuttable presumption of reasonableness on appeal"); United States v. Lewis, 436 F.3d 939, 946 (8th Cir.2006) ("[A] sentence falling within the applicable guideline range is presumptively reasonable."). In particular, we note the recent deliberations of the Ninth Circuit and the Fourth Circuit in United States v. Zavala, 443 F.3d 1165 (9th Cir.2006), and United States v. Johnson, 445 F.3d 339 (4th Cir.2006), respectively.

*U.S. v. Cage*, 458 F.3d 537 at 541-542 (6th Cir., 2006).  The 6th Circuit, later reaffirmed the "reasonableness" standard of review for appellate purposes and not the standard by which the District Court determined a sentence under § 3553 in *U.S. v. Vonner*, 516 F.3d 382 (6th Cir., 2008).[1] Finally, the United States Supreme Court has made it abundantly clear that, at the District Court level, there is no presumption of reasonableness of the calculated Guidelines when it stated:

> Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable. In Rita we said as much, in fairly explicit terms: "We repeat that the presumption before us is an appellate court presumption. . . . [T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." 551 U. S., at 351. And in

---

[1]  In United States v. Williams, 436 F.3d 706, 708 (6th Cir.2006), this court embraced an appellate presumption of reasonableness for within-guidelines sentences. In Rita, the Court upheld the presumption. 127 S.Ct. at 2462. Rita, we recognize, does not hold that appellate courts must embrace the presumption. See id. at 2462, 2467; see also Gall v. United States, ___ U.S. ___, 128 S.Ct. 586, 597, 169 L.E d.2d 445 (2007). But we see no good reason to abandon the presumption now—after using it for some time and after being told that we may continue to use it. The presumption, as the Supreme Court has explained, rests on sound reasoning. The guidelines represent the Sentencing Commission's attempt to reconcile the same § 3553(a) factors that district courts must consider in sentencing defendants. See Rita, 127 S.Ct. at 2463-64. These factors seek to balance Congress's competing interests in consistency, see § 3553(a)(4)-(6) (requiring sentencing courts to consider the guidelines, pertinent policy statements and "the need to avoid unwarranted sentencing disparities"), and in individualized sentencing, see § 3553(a)(1)-(3), (7) (requiring sentencing courts to consider "the nature and circumstances" of the crime and the defendant, the purposes of punishment and the types of punishment available). And, perhaps most importantly, when there is a confluence between the national views of the Sentencing Commission and the independent views of a sentencing judge, that "double determination significantly increases the likelihood that the sentence is a reasonable one." Rita, 127 S.Ct. at 2463. Add to this the reality that the presumption is rebuttable, id., and that there is no "presumption of unreasonableness" for outside-guidelines sentences, id. at 2467, and we fail to see a material downside to continuing to use the presumption as a modest tool for appellate review.

Gall v. United States, 552 U. S. ___ (2007), we reiterated that district judges, in considering how the various statutory sentencing factors apply to an individual defendant, "may not presume that the Guidelines range is reasonable." *Id.*, at ___ (slip op., at 11—12).

*Nelson v. United States*, No. 08-5657 (U.S. 1/26/2009) (2009)(Citing *Nelson v. United States*, 552 U. S. ___ (2008)).

The Honorable Jed Rakoff in the Southern District of New York revealed the "travesty of justice that sometimes results from the guidelines' fetish with abstract arithmetic, as well as the harm that guideline calculations can visit on human beings if not cabined by common sense." *United States v. Adelson*, 441 F.Supp.2d 506, 511 (S.D.N.Y. 2006). Judge Rakoff described, in the Court's Sentencing Memorandum, the absurdity of a government attorney blindly adhering to the "prevailing policy" of the Department of Justice seeking "a guideline sentence" when it was obvious that other important factors under § 3553(a) would not support the lengthy term of imprisonment under the Guidelines.

In fact, three years ago, the Attorney General of the United States issued a comprehensive, revised "Department Policy on Charging and Sentencing," which rejected the prior blind adherence to a "Guidelines Sentence" and imposed a new policy reflecting that "equal justice depends on individualized justice, and smart law enforcement demands it." See May 19, 2010 Memorandum to All Federal Prosecutors.  While the Memorandum directs prosecutors to "generally continue to advocate for a sentence within [the guidelines] range," advocacy at sentencing – like charging decisions and plea agreements – must also follow from an individualized assessment of the facts and circumstances of each particular case." *Id* at pp. 2-3. The compelling individual facts of this case establish that the general rule of sentencing within the Guidelines range is inappropriate, will not serve the ends of individualized justice and is not

smart law enforcement.  More importantly, advocating a "Guidelines Sentence" is in direct contrast to the trend of the district courts in this Nation to impose sentences below the Guidelines range. The most recent quarterly data published by the U. S. Sentencing Commission reflects a steady decrease of sentences "within range" and a progressive increase of sentences "below range," even when they are not Government sponsored pursuant to Guideline 5K1.1.10 Any contention by the Government that seeks to impose a Guidelines Sentence in this case without justifying such a sentence under all of the factors of § 3553(a) should be rejected by this Court as being violative of *Booker*, *Gall* and *Rita*.

To be sure, in imposing the final sentence in this case, the Supreme Court commands that this Court must calculate the Advisory Guidelines, before deciding whether to apply any departures or variance from the Guidelines. However, the Supreme Court does not require this Court to commence its sentencing analysis with a review of the Advisory Guidelines. In fact, Congress mandated that of all the factors set forth under § 3553(a), "the kinds of sentence and the sentencing range established" by the Guidelines is only the fourth consideration. As District Judge Rakoff explained in *Adelson*, § 3553(a) "gives first position to '(1) the nature and circumstances of the offense and the history and characteristics of the defendant." 441 F.Supp.2d at 512-13. Circuit Judge Barkett of the U.S. Court of Appeals for the Eleventh Circuit recently explained the importance of not deferring to the Guidelines in imposing a sentence. See *United States v. Docampo, Jr.*, 573 F.3d 1091, 1105 (11th Cir. 2009)(concurring in part and dissenting in part). Judge Barkett addressed the conflict in the Supreme Court's post-*Booker* decisions that the district court start the imposition of the sentence with a calculation of the Guidelines, while permitting the district courts to "tailor the sentence in light of other statutory concerns" and

reaffirming that the district courts may not presume that the Guidelines range is reasonable.

Judge Barkett explained:

> There is, of course, a wide range between a "starting point warranting respectful consideration" and "no presumption of reasonableness." Some of the Supreme Court Justices have expressed serious concern about how to apply the Guidelines given the latent ambiguity in their advisory nature: "[I]f sentencing judges attributed substantial gravitational pull to the now-discretionary Guidelines, if they treated the Guidelines result as persuasive or presumptively appropriate, the *Booker* remedy would in practical terms preserve the very feature of the Guidelines that threatened to trivialize the jury right." *Rita*, 551 U.S. at 390, 127 S.Ct. 2456 (Souter, J., dissenting); see also id. At 366, 127 S.Ct. 2456 (Stevens, J., concurring)("I am not blind to the fact that, as a practical matter, many federal judges continued to treat the Guidelines as virtually mandatory after our decision in *Booker*.")

Circuit Judge Barkett further explained how the Guidelines inevitably have a considerable

"anchoring" effect on a district court's analysis:

> Anchoring is a strategy to simplify complex tasks, in which numeric judgments are assimilated to a previously considered standard. When asked to make a judgment, decision-makers take an initial starting value (i.e., the anchor) and then adjust it up or down. Studies underscore the significance of that initial anchor; judgments tend to be strongly biased in its direction. *Id*., at note 5. Finally, Judge Barkett explained that sentencing judges must "make a concerted effort to reach independent conclusions about the appropriateness of a sentence in each specific case." *Id*. (emphasis in original).

**(i)      Specific Objections to the Guidelines Scoring by Probation**

John Stanton objects to the following as scored by Probation:

1. Defendant Objects to the loss being scored a $64,000,000.00 by way of imputation of Corporate income taxes due by Cast Crete Corporation.  If any loss is computed it should be based only upon his personal income taxes due.

2. That the Defendant did not obstruct Justice by committing Perjury while testifying in his trial.

3. That the Defendant should not be assessed points for an abuse of a position of trust. There is no evidence that the Defendant used his position within the company to take what did not rightfully belong to him.

4. That the Defendant should not be scored for sophisticated means as no sophisticated means were employed to avoid the filing of tax returns or in the allegations of interfering with the IRS.

**(ii)      The Advisory Guidelines are Presumptively Unreasonable**

In this particular case, Probation has calculated guidelines of 210 months to 262 months for convictions of one three year felony, and seven one year misdemeanor counts.  If the Court were to sentence John to the maximum sentence on each count to be served consecutively, the maximum possible term of incarceration is 120 months.  The Guidelines, as calculated, exceed the maximum possible sentence by 142 months, more than double the legal sentence. An illegal sentence includes a sentence in excess of the statutory maximum, as well as a sentence that is constitutionally invalid. See *Hill v. United States*, 368 U.S. 424, 430 (1962). It should naturally flow that if the guidelines are capable of exceeding the maximum penalty under law, that they are presumptively unreasonable and should be disregarded, even in their current advisory role.

(iii)     The Guidelines impermissibly Suggest Mandatory Consecutive Sentencing

In this matter, probation recommends a sentence of 120 months, which only can be only achieved by the imposition of consecutive sentencing which is not mandatory.  18 U.S.C 3584 states in relevant part:

(a) Imposition of Concurrent or Consecutive Terms.—If multiple terms of imprisnment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisnment imposed at the same time run concurrently unless the court orders

or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

18 U.S.C. Sec. 3584 Multiple sentences of imprisonment (United States Code (2011 Edition)) .

The statute, in fact, suggest that the default sentencing scheme is concurrent sentencing.  There is no statutory mandate for consecutive sentencing in this matter.

### (iv)    Consecutive Sentencing Invokes a Case of Sentencing Double Jeopardy

The Fifth Amendment to the United States Constitution states in relevant part: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb. . ." The Double Jeopardy Clause affords a defendant three basic protections: "[I]t protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. at 165, 97 S.Ct. at 2225 (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Because this case involves a single prosecution, only the third protection is relevant here.

> The protection against multiple punishments is "designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." *Ohio v. Johnson,* 467 U.S. at 499, 104 S.Ct. at 2540-41. Whether punishments are multiple, for purposes of double jeopardy analysis, is a question of legislative intent. Id. If the statutes under which the defendant was sentenced specifically authorize cumulative punishments for the same offense, a court may impose cumulative punishment without running afoul of the Double Jeopardy Clause. *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983); *United States v. Ricks,* 817 F.2d 692, 698-99 (11th Cir.1987). If, however, the statute does not clearly authorize cumulative punishment, then the court must apply the test set out in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), to determine if the offenses are sufficiently distinguishable to permit the imposition of cumulative punishment. See *Ohio v. Johnson*, 467

U.S. at 499 n. 8, 104 S.Ct. at 2541 n. 8; *Garrett v. United States*, 471 U.S. 773, 779, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985) (holding that "the *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history").

* * *

The language "in addition to other penalties provided by law" contained in Sec. 7201 (but not in Sec. 7206(1)) does not rise to the level of clear authorization for multiple punishments that this circuit has recognized as sufficient in prior cases. See *Fallada v. Dugger*, 819 F.2d 1564, 1572 (11th Cir.1987).

*U.S. v. Kaiser*, 893 F.2d 1300 (C.A.11, 1990).

In this matter the Jury was allowed to find guilt on Count One (1) that the Defendant Corruptly Interfered with Internal Revenue Laws, based soley on the conduct charged in Counts two (2), three (3), four (4), five (5), and six (6) of the indictment thus exposing the Defendant to multiple convictions and punishment for the same alleged acts alleged in the indictment. The affect is one of being punished multiple times for the same offenses.

**(v)      18 U.S.C. 3553 Factors**

18 USC § 3553 states in relevant part

Section 3553 Imposition of a sentence

(a)      Factors To Be Considered in Imposing a Sentence. - The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
(1)      the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed -
     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
     (B) to afford adequate deterrence to criminal conduct;
     (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(2)      the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for –

(A) the applicable category of offense committed by the applicable
category of defendant as set forth in the guidelines

*(a) 18 USC §3553(1)*

As stated earlier in this memorandum, Judge Rakoff explained in Adelson, § 3553(a)
"gives first position to '(1) the nature and circumstances of the offense and the history and
characteristics of the defendant.'" 441 F.Supp.2d at 512-13. In this matter, John was convicted of
one count of Corruptly Interference with Internal Revenue Laws and seven misdemeanor counts
of failing to file tax returns individually and on behalf of various corporate entities.

Despite the voluminous irrelevant evidence admitted at trial regarding John's spending
habits, the core of the prosecution's case is John didn't turn over documents to the auditor when
promised, and that he failed to file income taxes for himself and corporate entities.  Count I has
been deemed a felony by Congress punishable by a maximum of three years in prison, and
Counts II – VIII – failing to file tax returns have been deemed by congress to only be
misdemeanors, punishable by a maximum of one year in prison.[2]  The relavant time period
involved is 2004 through 2007.  There was no testimony that John nor Ralph Hughes took from
the company any money that was not representative of their ownership share. There was no
testimony that the success of the Caste Crete was due to illegal or unethical business practices. In
fact the loss claimed by the IRS in this matter is not a loss due to theft, embezzlement or unsound
business practices, it is a loss based upon tremendous success and prosperity in a short period of
time. There was no testimony that John hid anything from his business partners or even the IRS,
no testimony of off shore accounts, or bagmen leaving the country with the loot.  To the
contrary, the IRS civil agent and the other employees and officers of Caste Crete testified that the

---

[2] Prior to certain Amendments in 1990, failing to file tax returns was, at one time, a felony
punishable by up to 5 years in prison, but Congress amended the statute down to a misdemeanor.

Revenue Agent was given a conference room adjacent to John's office, and was on site for numerous days pouring over voluminous records supplied by the company. John did not direct his embezzling comptroller to hide transactions; in fact, the testimony was for him to fully disclose all disbursements of profits to the Government in the form of 1099's.

Despite the Government's best efforts to conjure up feelings of envy, and distain for John because Susan Wade Stanton had to have a Maybauch automobile, and her sister Erin had to have a Hummer, and he provided the means for those purchases does not make the crimes he was convicted of any more heinous, but rather creates the illusion that he was an evil man for living well.

Looking at the relevant conduct which encompasses three years out of 64 years of John's life, the history and characteristics of John and his life are more relevant and point towards leniency in this matter. The presentence report tells a generic story of John's life, to get the rest of the story, the Court need only look to the letters of support filed with this memorandum.[3] Those letters speak of a good husband and father, trusted business partner, a mentor, friend, and a solid generous citizen of his community. The letters speak for themselves, and speak loudly to the true good character of John Stanton.

*(b) 18 U.S.C 3553 (a)(2)(A).*

18 U.S.C 3553(a)(2)(A) states in relevant part:

(2) the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

[3] The letters filed with CM/ECF will be filed in redacted form, but original unredacted letters will be available to the Judge and the Government. Redactions are mainly personal information such as age, birthdates and home addresses.

What is just punishment for John?  Convicted of a three year felony and seven identical one year misdemeanors'?  He is 64 years old, if the court were to sentence him according to the Guideline recommendation of 120 month, John would be 74 years old.  According to the most recent statistic available, the average life expectancy for a white male living in the State of Florida is 79 years old. Is a 10-year sentence necessary as just punishment for someone who has lived over 50 years of his life crime free?  The answer is no, a modest concurrent sentence of less than 36 month not only reflects the seriousness of the crimes for which he was convicted of,  but would provide ample punishment for a man of John's age and maturity.

    *(c)  18 U.S.C 3553(2)(B)*

18 U.S.C 3553(2)(B) states "to afford adequate deterrence to criminal conduct".  This provision assumes that a Defendant, once released would be deterred for the remainder of his or her life from repeat behavior.  It can be argued that if John were released today, after almost 11 months of incarceration, that he has already received adequate deterrence.  To add more time in prison is nothing more than pure punishment, and give no opportunity for John to prove to this Court and society that he has been rehabilitated, and has been deterred from engaging in similar conduct in the future.

    *(d)  18 U.S.C 3553(2)(C)*

18 U.S.C 3553(2)(C) states "to protect the public from further crimes of the defendant" was the public ever at risk?  In this instance, there was no danger to society.  John Stanton, during his tenure at Caste Crete helped create jobs, provided benefits to his employees, and helped build a company that gave generously to the community.  He was never and will never be a threat to the public. At the time of his arrest in this matter, he was diligently working to bring to the public green technology, and alternative fuels for the future.

**RESTITUTION**

The Defendant objects to the imposition of restitution in this matter based upon the Corporate tax liability which was the product of a Tax Court settlement between the IRS and Caste Crete Corporation.  There is no basis in law to require the Defendant to pay restitution, as the conduct for which he was convicted of was not the direct cause of the loss to the IRS.

**CONCLUSION**

Before the Court is a 64 year old man with young children yet to be raised. He conducted himself in a crime free manner for 50 years or more, he is a decorated Vietnam Veteran, who not only gave his time in service to this Country, but gave parts of his body in service.  He risked his own life to save another, and has spent his life taking care of those closest to him.

The government tries to make him out to be a monster, but that is no surprise, as most agents of the executive branch dived the average person into three categories, those who have done something illegal, and got caught, those who have done something illegal and have not been caught yet, and those who have not done anything illegal yet.  They presented to the Court, the Jury and Probation a tale of a man who lived a privileged life, who purchased expensive cars and homes, and for that, he deserves to spend the remainder of his life in Prison.

The advisory guidelines suggest a sentence of more than double the statutory guidelines, and suggest that the Court must utilize consecutive sentencing to achieve a reasonable sentence in this matter.  However, the law presumes a concurrent sentencing scheme, and the factors outlined in 18 U.S.C 3553 support a concurrent sentence well below the advisory guidelines.

WHEREFORE John D. Stanton, for the reasons stated herein, stated orally on the record, and those outlined in the addendum to the Pre-Sentence report, respectfully request that the

Court impose a reasonable sentence of less than 36 months,  Deny the Government's request for

Restitution, and to afford any other relief that the Court deems equitable.

By:s/ Paul DeCailly
Paul DeCailly, 796301
Attorney for Defendant
19455 Gulf Blvd., Ste 8
Indian Shores, FL 33785
(813) 286-2909
pdecailly@dlg4me.com

Dated: August 5, 2013

## Certificate of Service

I hereby certify that on August 5, 2013, I electronically filed the foregoing  MEMORANDUM

with the Clerk of Court using the CM/ECF system which will send notification of such filing to

the following e-mail addresses: **Robert Monk at robert.monk@usdoj.gov,**

**TPADocket.Mailbox@usdoj.gov, beverly.coats@usdoj.gov** and I hereby certify that I have

mailed or served the document or paper to the following CM/ECF non- participant in the manner

(mail, hand-delivery, etc.) indicated by the non-participant's name: John D. Stanton, Defendant

via Hand Delivery.

By:s/ Paul DeCailly
Paul DeCailly, 796301
Attorney for Defendant
pdecailly@dlg4me.com